Joel S. Cohen, PC
35 Worth Street, 3rd Floor
New York, NY 10013
eFAX: 646-219-3352
MOBILE: 914-500-7398
EMAIL: jcesq99@gmail.com

General Counsel
International Police Association Region
2 – New York

Shomrim Society
New York City Police Department

May 17, 2021

The Honorable Brian M. Cogan
United States District Judge
United States District Court 225
Cadman Plaza
Brooklyn, NY 11201

Re: United States v. Qi Feng Liang Docket
No. 18 CR 419 (BMC)

Dear Judge Cogan:

I write, respectfully, in mitigation of punishment on behalf of Qi Feng Liang, also called Alex, who is to be sentenced on May 26 following his guilty plea to engaging in financial transactions which were structured to avoid currency reporting requirements.

Alex was initially charged in an Indictment with offenses involving counterfeiting and unlawfully importing counterfeit goods into the United States. After several meetings with the Government, he was offered the opportunity to plead guilty to the structuring offenses in accord with the terms of a written Plea Agreement.

Mr. Liang has been married to ~~████████████~~, the sister of the defendant Zhi Ming Zhang, for fifteen years. They have two young children. Prior to the arrest and detention of his brother-in-law by Immigration authorities, Alex knew little or

The Honorable Brian M. Cogan
Re: Qifeng Liang
Page two


nothing of the import or the shipping businesses, although Mr. Zhang was heavily
involved in both.  When his brother-in-law was remanded into Immigration custody
several years ago, Alex was earning a living in the construction trade, and as
reflected in the letters that accompany this one was very good at what he did.
His legal problem arose when Zhang called him from jail and asked Alex to visit
him immediately.  It was at this point that Zhang asked Alex to take over his
business; he would give Alex almost daily instructions about what to do.
According to Paragraph 17 of the Pre-Sentence Report, (PSR) Alex "...operated
a construction business in New York State and used his business to facilitate
the importation of shipping containers filled with counterfeit goods..." and
"...received payments principally in the form of cash and money orders co-
mingled with legitimate payments to his business..." and "...participated in a
separate but related scheme in which {he}utilized structuring to evade having
to file Currency Transaction Reports." It is the latter scheme for which he is
being sentenced.

At the time he initially agreed to assist his brother-in-law in running the
container business Alex was unaware of the illegal nature of the goods being
shipped.  He never saw them nor handled them but got involved simply out of
a familial obligation to assist his wife's brother.  Indeed, Alex terminated his
business relationship with Zhang and the shipping company very soon after
coming to understand that he was involved in something illegal

When they were arrested Zhang told Alex not to worry because he (Zhang)
would tell the Government that Alex was unaware that he was running an illegal
business. Evidently that never happened.  It is said that no good deed goes
unpunished, and Alex's agreement to assist Zhang has shattered his entire
family. ~~Alex's wife Charlene no longer speaks to her brother, and Zhang is
alienated from his parents as well~~.  Since being arrested it has been Alex that
has taken care of the needs of his elderly parents-in-law.

The Honorable Brian M. Cogan
Re: Qifeng Liang
Page three

Alex Liang is one of the most decent, generous, and caring people I have ever represented. I have gotten to know him and his wife and children; he is a doting hands-on parent and devoted husband.

His family situation is compelling and, in my view, in combination with other factors, warrants a non-custodial sentence. [1] As noted in Paragraph 47 of the PSR, ~~Charleen suffers from bi-polar disorder and depression and requires daily psychotropic medications to manage her symptoms. As well, she has severe food allergies. Various letters from physicians who have treated and continue to treat Charleen were forwarded to the Probation Department which confirm and explain these conditions, including one from her family physician which specifically indicates a history of self-harm and indicates that she is currently taking Seroquel, which I know to be a powerful anti-psychotic drug.~~

~~As if these stressors and burdens on Mr. Liang's family were not enough, their children, ages 11, suffer from emotional problems, which weigh heavily on the family as a whole and the defendant in particular. For Alex, who knows that his continued presence at home is the only thing holding his family together. Although Vincent is only 8, he too suffers from various-like symptoms include frequent crying, self-isolation and difficulty following instructions. He is also described by a family therapist as being "sensitive," "oversensitive" and "hyperactive with disorganization and limited attention." (PSR, Paragraphs 47 and 49).~~

As further noted in the PSR, the children are unaware of Mr. Liang's legal problems. Alex's major concern, expressed frequently to me, is the further intolerable pressures his incarceration would have ~~on his children and his wife's condition.~~ When interviewed by the Probation Officer, ~~Charleen~~ stated that she

---

[1] I have discussed this at length with U.S. Probation Officer Jennifer Fisher who does not agree that a jail term would have an unduly harsh impact on Alex's family.

The Honorable Brian M. Cogan
Re: Qifeng Liang
Page four


cannot live without her husband, and from what I have seen and from my own life's experiences I believe her.

I am personally aware of acts of generosity performed by Alex. For example, at the beginning of the pandemic he provided hundreds of protective masks and pairs of gloves (PPE) to his local Police precinct and a medical facility. (see letter of support from Brandon Kong, accompanying this letter.) He also sent two cases of masks to me to be sure that me, my family and office mates would be protected against infection. With due respect to my many other clients, I am not aware that any of them engaged in such concern for others at their own expense. Brandon's letter further addresses the difficulties that ~~young Austin is coping with, including "violent tendencies in school~~." Brandon expressed the belief that "~~without [Alex], his family will fall apart~~" As well he points to numerous acts of kindness toward others by Alex.

The letter from Roy Chen notes that not only did he provide PPE to people in the United States, but he also bought "…a lot of masks to send overseas" to poor people in small villages in China. Mr. Chen also states that Alex "…has a big heart and is always trying to help people."

Pastor Michael Silva notes that Alex has donated "…all sorts of hotel furniture and bedroom furniture…" to the Church of Jesus Christ located in Edison, NJ, and that he "…has a heart for helping others." As well, the Pastor notes that Alex "…shared his brokenness with him and his acceptance of responsibility." Qi Kang Mei notes that he and Alex have grown up together, and that Alex "was there for him" during a very difficult divorce. He states that Alex bought "thousands" of masks and PPE for donation, and inspired Mei to do the same.

Judith O'Shea, who works at Home Depot, writes that she has known Alex for six years. She writes that "His goodness as a person shines through like a beacon and it is impossible not to want to better yourself by following his lead."

The Honorable Brian M. Cogan
Re: Qifeng Liang
Page five

 and that he shares family pictures and stories that can only come from true love. She says that we should all spend a day with Alex and his family to remind us, in these troubled times, to remind us what it truly means to love the land of the free and home of the brave."

Simon Kong, who has known Alex for ten years, writes that Alex has always been there for him and his family. He writes that Alex helped deliver groceries to elderly homebound people during the pandemic, and that while he was surprised to hear that Alex had broken the law, he was not surprised that Alex accepted responsibility for his wrongdoing. I find these letters, from the people who know Alex best, to be exceptional and cannot recall ever seeing such letters written on behalf of a client.

## CONCLUSION

Qifeng Liang, but for his involvement in the instant offense, is a shining example of the immigrant experience. He came to the United States unable to speak or understand English but unlike many immigrants who fail to integrate into American culture he has mastered both and speaks nearly unaccented English. He has provided for his family and held them together despite ~~tremendous challenges experienced by Charlene and Austin.~~ It is plain from reading the PSR and letters of support submitted herewith that he really IS the glue holding his family together. His sentencing Guidelines are 10-16 months.

A custodial sentence, even a relatively brief one, would ~~impact his family far beyond what a family not suffering under the weight of psychological and psychiatric problems would endure.~~ In my view it could literally be life threatening ~~to his wife~~ and I say that without overstatement or hyperbole. A non-Guidelines sentence, which could include a period of home confinement or a curfew would, in the circumstances, be sufficient but not greater than necessary to accomplish the goals of sentencing set forth in 18 USC 3553(a).

The Honorable Brian M. Cogan
Re: Qifeng Liang
Page six

Moreover, his continued presence at home will ensure ~~the continued safety of Sharleen and Austin, who have such difficulty managing alone.~~

The letters of support indicate that he is a truly decent man who contributes significantly to the welfare of others without any hope of personal gain. I therefore ask, respectfully, that Your Honor impose a non-custodial sentence on Qifeng Liang on May 26, and I thank you for considering the foregoing.

Because of the sensitive nature of some of the information in this letter, much of which is subject to ~~the privacy restrictions of the Health Insurance Portability and Accountability Act (HIPA), I ask that it be filed under seal.~~ I will file a redacted copy in the next day or two, but because this submission is late, with the consent of the Government, I am emailing it so that the Government has sufficient time to respond and the Court sufficient time to consider the issues raised herein.

Very truly yours,

/S

Joel S. Cohen (JC6998)

cc: AUSA William Campos, by email
    USPO Jennifer Fisher, by email

Attachments